O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WILLIAM D. SLATTERY, et al.,     )     CASE NO.: CV 08-393 ABC (AGRx)
                                 )
                    Plaintiffs,  )     **DEFENDANTS' MOTIONS TO DISMISS**
                                 )
        v.                       )
                                 )
GOLDENTREE ASSET MANAGEMENT,     )
LP, et al.,                      )
                                 )
                    Defendants.  )
_____

        Pending before the Court is Defendants GoldenTree Asset

Management LP and GTAM Special Realty, LLC's ("GoldenTree's") Motion

to Dismiss Complaint, filed on May 29, 2008.  Plaintiffs William D.

Slattery, Courtney Eftekhar, and 44 others, on behalf of themselves

and other class members ("Plaintiffs"), opposed on June 9, 2008.

GoldenTree replied on June 16, 2008.  Defendants FTI Consulting, Inc.

("FTI") and Gina Gutzeit joined GoldenTree's motion and filed a

separate motion to dismiss on May 28, 2008.  Plaintiffs separately

opposed on June 9, 2008 and FTI and Gutzeit replied on June 16, 2008.

The Court had previously vacated the July 14, 2008 hearing date.  See

Fed. R. Civ. Proc. 78; Local Rule 7-15.  The Court rules as follows.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs William Slattery, Courtney Eftekhar, and Robert Leverett filed the original complaint in this case on January 22, 2008.  The Court granted GoldenTree's motion to dismiss the complaint under Rule 12(b)(6) on April 9, 2008 and allowed these three Plaintiffs to file an amended complaint "to remedy the problems addressed" by the Court in that Order.  One major flaw in these Plaintiffs' original complaint was the wholesale incorporation of a prior complaint filed by GoldenTree – Plaintiffs' adversary – in <u>GoldenTree Asset Management LP, et al. v. John Visconti, et al.</u>, Case No. BC 384529, filed on January 30, 2008.[1]  The Court admonished Plaintiffs not to rely on wholesale allegations in another complaint: "The Court notes that Plaintiffs may be better served in filing an amended complaint that fully sets out their claims, rather than relying on a complaint in another matter that was drafted by their adversary."  Rather than heed the Court's comment, Plaintiffs filed an amended complaint that incorporated, **verbatim**, 20 pages of this complaint.  Needless to say, this was not what the Court had in mind, nor can Plaintiffs' interpretation be rationally gleaned from the Court's comment.

In addition to borrowing wholesale from another complaint, Plaintiffs dropped Plaintiff Leverette and added a staggering 44 new Plaintiffs in their First Amended Complaint ("FAC"), moving this case far beyond the scope presented in the original complaint.  The current Plaintiffs can be divided into four groups:

---

[1]The case was voluntarily dismissed by GoldenTree on January 30, 2008, following an Order to Show Cause re: Subject Matter Jurisdiction from the Court.

(1)   Slattery, who worked for companies 247 Delivers and Avalon Visual Corp. from April 2006 to May 2006 and who alleges he failed to receive minimum wage and overtime (FAC ¶¶ 22, 23);

(2)   the "Police Officer Plaintiffs," represented by Plaintiffs Beck, Bitting, Cook, Dejong, Dible, Fernandez, Fisher, Flynn, Fuller, Furtrell, Gomez, Henderson, Hofstetter, Justic, Kalstrom, Klein, Lamb, Maycott, Natalie, Newell, Newton, Nichols, Niehaus, Odin, O'Steen, Papworth, Ramos, Rose, Rowles, Scholl, Tindall, Todd, Voelker, and Webb, all of whom worked between March 2004 to March 2006 and who allege they received late paychecks (FAC Ex. 1);

(3)   the "Sonny Liston Plaintiffs," represented by Plaintiffs Dupont, Knaub, Lindholm, Putnam, Stabley, Chizema, Craig, Schalk, and January, all of whom worked for companies Avalon Hollywood and Paradisio between April 2004 and June 2004, and who allege they have not been paid wages to date (FAC ¶ 31); and

(4)   Plaintiff Eftekhar, who worked for "Defendants" until January 2008 and who alleges she did not receive her final paycheck and vacation pay (FAC ¶ 28).[2]

In the FAC, Plaintiffs allege they are all former employees of "Defendants." (FAC ¶¶ 1-4.) Axium International, Inc. ("Axium") was among those entities with whom Plaintiffs worked, but it filed bankruptcy in January 2008 and is not named as a Defendant in this suit. (Id. ¶ 5.) Prior to filing bankruptcy, Axium was the third-largest payroll services company in the entertainment industry. (Id. ¶ 17 (GoldenTree Compl. ¶ 37).) GoldenTree established a loan facility with Axium in November 2004. (Id. (GoldenTree Compl. ¶ 41).) At some point, the principals of Axium, Defendants John Visconti and Ronald Garber, began siphoning off funds from Axium for personal purposes. (Id. (GoldenTree Compl. ¶ 49).)

These actions led the IRS to issue final notices in June and July 2007 of its intent to levy back taxes against three Axium subsidiaries for amounts approximating $31 million. (Id. (GoldenTree Compl. ¶

---

[2]Although Annette Velez Rosado is named in the body of the FAC, she is not named as a Plaintiff.

63).)  Axium failed to pay these amounts and the IRS filed tax liens against Axium assets in August 2007 totaling $26 million.  (<u>Id.</u>) GoldenTree was unaware of the liens until late August 2007.  (<u>Id.</u> (GoldenTree Compl. ¶ 64).)  Without discussing the issues with GoldenTree, Axium paid the tax liens.  (<u>Id.</u> (GoldenTree Compl. ¶ 65).) Ultimately, Axium defaulted on its loans with GoldenTree.  (<u>Id.</u> (GoldenTree Compl. ¶ 74).)

In an effort to stave off Axium's impending bankruptcy, GoldenTree executed a forbearance agreement with Axium on November 5, 2007, which relieved Axium's principals of the day-to-day management of the company.  (<u>Id.</u> (GoldenTree Compl. ¶ 77).)  GoldenTree installed Gina Gutzeit of Defendant FTI Consulting, Inc. as the restructuring officer to handle the "management" of the Axium entities.  (<u>Id.</u>) Despite GoldenTree's actions, Axium filed for Chapter 7 bankruptcy protection on January 8, 2008.  (<u>Id.</u> (GoldenTree Compl. ¶ 88).)

Because of an automatic stay imposed by the Bankruptcy Code, 11 U.S.C. § 362(a)(1), Plaintiffs cannot recover for their FLSA claims from Axium at this time.  Plaintiffs have instead sued GoldenTree, among others, alleging without elaboration that GoldenTree, FTI, Gutzeit, and Axium (among others) were an "enterprise" under the FLSA. (FAC ¶ 5.)  Plaintiffs allege that:

> On information and belief, at some point in the second
> half of 2007, GoldenTree effectively took over management of
> Axium International, Inc., Axium Holdings, Inc., and all of
> their subsidiaries included within the Axium companies.  In
> November of 2007, acting pursuant to the Forbearance
> Agreement referenced in paragraph 76 of the GoldenTree
> Complaint, GoldenTree, GTAM, and FTI replaced [Defendants]
> Visconti and Garber with Gutzeit.  Thereafter, Gutzeit was
> responsible for day-to-day management of Axium, replacing
> Visconti and Garber in the day-to-day management of Axium.
> Gutzeit's duties in the day-to-day management as the
> restructuring officer of Axium included, without limitation,
> the normal duties of a Chief Executive Officer of a

4

1   corporation.

2   (Id. ¶ 18.)  Plaintiffs also allege that Gutzeit: (1) was responsible

3   for the "effective administration and management of all affairs of

4   Axium," including "planning, organizing, controlling and directing the

5   overall operation of [] Axium; preparing, presenting and monitoring

6   the budget; and promoting Axium's affairs with customers and

7   employees"; (2) "had authority to require and receive any and all

8   information from any department of Axium [that] Gutzeit may have

9   deemed necessary to fulfill her duties and responsibilities"; (3) had

10  duties and responsibilities, including "(a) monitoring and reporting

11  to GoldenTree regarding the performance of the Axium departments, (b)

12  evaluating the performance of various departments of Axium and

13  recommending to GoldenTree whether the various departments should be

14  modified or should remain in tact [sic], (c) initiating changes in

15  directives of GoldenTree with respect to the day-to-day operations,

16  including the employees' duties and organization of Axium, (d)

17  reviewing the performance of the department heads, (e) conferring with

18  department heads, (e) [sic] making recommendations to GoldenTree, for

19  its consideration and determination, of any changes to be made with

20  respect to the business of Axium, (f) reviewing, approving, or denying

21  expenditures of Axium, (g) making recommendations to GoldenTree with

22  respect to Axium's budget, (h) implementing GoldenTree directives with

23  respect to the budget."  (FAC ¶ 19.)  Notably, Plaintiffs allege that

24  Gutzeit "signed all paychecks issued by Axium, including those

25  previously executed by Garber, who executed all paychecks during the

26  period from in or around January of 2003 through in or around November

27  of 2007."  (Id.)

28      Plaintiffs further allege that GoldenTree "actively operate[d]

5

the business of Axium for its benefit" because "GoldenTree felt unless it took affirmative steps to take over the day-to-day operation of the Axium payroll services business, the payroll services business of Axium would no longer exist and GoldenTree would never be repaid on its investment." (<u>Id.</u> ¶ 20.)  Plaintiffs claim that, "[h]istorically, lenders did not and do not take such extraordinary measures, but since the advance of funds from GoldenTree to Axium was more in the character of an investment than a loan, GoldenTree had the legal right to exercise complete operational control and exercised this right by installing Gutzeit on or about November of 2007." (<u>Id.</u>)  As a result, "[i]n her day-to-day management of Axium, Gutzeit took direction from GoldenTree and reported to GoldenTree." (<u>Id.</u>)  Finally, Plaintiffs claim that "Defendants" (without identifying which Defendants) had a common business purpose in operating Axium "to safeguard the monies they invested in or advanced to Axium and/or, in the case of individual Defendant[] Gutzeit . . . to safeguard the monies to be paid to them as their salaries or other compensation due to them." (<u>Id.</u> ¶ 21.)

Plaintiffs allege two claims: (1) failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216; and (2) a violation of Cal. Bus. & Prof. Code § 17200 for the alleged FLSA violations.[3]

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  <u>See</u> Fed. R. Civ. Pro. 12(b)(6).  In ruling

---

[3]Even though Plaintiffs allege they were not given meal and rest breaks, were not paid for vacation time, and were not paid timely, they allege no California Labor Code violations.

1   on a Rule 12(b)(6) motion to dismiss, the Court must accept as true

2   all material allegations in the complaint, as well as reasonable

3   inferences to be drawn from them.  See Pareto v. F.D.I.C., 139 F.3d

4   696, 699 (9th Cir. 1998).  The complaint must be read in the light

5   most favorable to plaintiff.  See id.  However, the Court need not

6   accept as true any unreasonable inferences, unwarranted deductions of

7   fact, or conclusory legal allegations cast in the form of factual

8   allegations.  See, e.g., Western Mining Council v. Watt, 643 F.2d 618,

9   624 (9th Cir. 1981).  In short, a complaint need not contain detailed

10  factual allegations, but it must allege facts sufficient to raise a

11  right to relief that rises above the level of mere speculation and is

12  plausible on its face.  See Bell Atl. Corp. v. Twombly, 127 S. Ct.

13  1955, 1965, 1969 (2007).

14       Moreover, in ruling on a 12(b)(6) motion, a court generally

15  cannot consider material outside of the complaint (e.g., those facts

16  presented in briefs, affidavits, or discovery materials).  See Branch

17  v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  A court may, however,

18  consider exhibits submitted with the complaint.  See id. at 453-54.

19  Also, a court may consider documents which are not physically attached

20  to the complaint but "whose contents are alleged in [the] complaint

21  and whose authenticity no party questions."  Id. at 454.  It is proper

22  for the court to consider matters subject to judicial notice pursuant

23  to Federal Rule of Evidence 201.  See Mir, M.D. v. Little Co. of Mary

24  Hospital, 844 F.2d 646, 649 (9th Cir. 1988).

25  **III. ANALYSIS**

26       **A.   All Claims by Plaintiffs Other Than Eftekhar Against**

27            **GoldenTree, FTI, and Gutzeit Must Be Dismissed.**

28       GoldenTree, FTI and Gutzeit argue that Plaintiffs improperly

1  added the Police Officer Plaintiffs and the Sonny Liston Plaintiffs

2  following the Court's Order dismissing the original complaint with

3  leave to amend because two Defendants, Toto and Rodriguez, already

4  filed answers.   Normally, Plaintiffs would be permitted to amend their

5  complaint once as a matter of right, but when some Defendants have

6  answered, they may only add claims affecting Defendants who have not

7  yet filed an answer.  See, e.g., Williams v. Board of Regents of the

8  Univ. Sys. of Ga., 477 F.3d 1282, 1291 (11th Cir. 2007) ("If the case

9  has more than one defendant, and not all have filed responsive

10 pleadings, the plaintiff may amend the complaint as a matter of course

11 with regard to those defendants that have yet to answer."); Ramirez v.

12 Silgan Containers, 2007 WL 1241829, at *3 (E.D. Cal. 2007) ("Where

13 there are multiple defendants, and some defendants have filed an

14 answer and some defendants have not, the plaintiff may amend the

15 complaint as a matter of course as to the non-answering defendants

16 only.").  Defendants Toto and Rodriguez, both of whom are alleged to

17 be day-to-day managers of Axium and part of the alleged "enterprise"

18 under the FLSA (FAC ¶¶ 5, 12, 16), answered Plaintiffs' original

19 complaint on April 8, 2008.  However, Goldentree, FTI, and Gutzeit did

20 not answer prior to Plaintiffs filing the FAC, so, under Rule 15(a),

21 Plaintiffs were permitted to amend their claims (and add new

22 Plaintiffs).[4]  Therefore, even if adding plaintiffs might have been

23 improper as to Defendants Toto and Rodriguez, Plaintiffs properly

24 amended their complaint as to GoldenTree, FTI, and Gutzeit.

25      Nevertheless, all claims by Slattery, the Police Officer

26

---

27      [4]A motion to dismiss is not a responsive pleading under Rule
   15(a).  Crum v. Circus Circus Ents., 231 F.3d 1129, 1130 n.3 (9th Cir.
28 2000).

Plaintiffs, and the Sonny Liston Plaintiffs (excluding Eftekhar) that predate GoldenTree's, FTI's, and Gutzeit's involvement with Axium must be dismissed.  Plaintiffs allege that GoldenTree, FTI, and Gutzeit became involved in Axium's operations from November 2007 until Axium's bankruptcy in January 2008.  (FAC ¶ 18.)  Slattery's claims arose during his employment with Alavon Visual and 247 Delivers between April and May of 2006.  (Id. ¶ 22.)  The Police Officer Plaintiffs' claims arose during their employment on various dates between 2004 and 2006.  (Id. ¶ 30, Ex. 1.)  The Sonny Liston Plaintiffs' claims arose during their employment in 2004.  (Id. ¶ 31.)  Even if Plaintiffs effectively alleged that GoldenTree, FTI, and Gutzeit constituted an enterprise under the FLSA (discussed below), they have failed to demonstrate that these Defendants must be held liable for wage violations occurring prior to their involvement with Axium. Plaintiffs cite no law to suggest that an entity deemed a joint employer or part of an enterprise under the FLSA automatically assumes preexisting wage liability of another joint employer or member of the employer enterprise.  Plaintiffs have not alleged that GoldenTree – or especially consultant FTI and its employee Gutzeit – had any ownership interest in Axium, sought to purchase Axium's operations (and concomitant liabilities), or sought to take over Axium in some sort of corporate transaction.  At most, Plaintiffs allege that GoldenTree sought to keep Axium operating to ensure their loan to the company was protected.  (FAC ¶ 18 (GoldenTree Compl. ¶ 77).)  Nothing in the FAC even remotely suggests that GoldenTree, FTI and Gutzeit assumed any of Axium's preexisting liabilities.[5]

---

[5]Plaintiffs argue that GoldenTree, FTI, and Gutzeit must be
(continued...)

1    Plaintiffs also may not amend their FAC to allege inconsistent

2  facts to impose liability on GoldenTree, FTI, and Gutzeit for these

3  claims.  Plaintiffs have alleged a "management" relationship among

4  GoldenTree, FTI, Gutzeit, and Axium, not an ownership relationship and

5  now to allege that any of these Defendants somehow took over the

6  actual ownership of Axium would fundamentally conflict with

7  Plaintiffs' existing allegations.  In fact, Plaintiffs included

8  detailed allegations of GoldenTree's role in the eventual bankruptcy

9  of Axium (taken from GoldenTree's complaint), which conclusively

10  demonstrate that GoldenTree did <u>not</u> have an ownership interest in

11  Axium such that it assumed Axium's preexisting FLSA liabilities.  (FAC

12  ¶ 17 (GoldenTree Compl. ¶¶ 77-87).)  Plaintiffs are bound by their

13  allegations and may not salvage their claims by pleading new,

14  inconsistent facts.  <u>See</u> <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291,

15  296-97 (9th Cir. 1990) (denying leave to amend since "[i]t would not

16  be possible for [plaintiff] to amend his complaint to allege a

17  completely new injury that would confer standing to sue without

18  contradicting any of the allegations of his original complaint.").

19

20    [5](...continued)
liable for preexisting wage claims because "[t]he wages and/or
21  liquidated damages of the Slattery, Police Officer, and Sonny Liston
Plaintiffs were due and payable when FTI and Gutzeit became involved.
22  Since these Defendants were in a position to decide whether or not to
pay the wages and/or liquidated damages, and decided not to pay them,
23  they should be deemed the responsible FLSA employers, at least at this
stage."  (Pl. Opp'n to FTI Motion at 18:6-10.)  This proposition is
24  both unsupported and unfair.  Because GoldenTree, FTI, and Gutzeit
were not involved with Axium prior to November 2007, they never had
25  the opportunity to avoid liability for failing to pay Plaintiffs'
wages.  The Court will not now impose on them the liability to pay
26  wages without a far stronger showing that they affirmatively assumed
liability for these wages and liquidated damages by doing more than
27  allegedly assuming management of Axium's financial health in November
2007.
28

The Court GRANTS both GoldenTree's and FTI and Gutzeit's motions to dismiss and DISMISSES the FLSA claims against them brought by Slattery, the Police Officer Plaintiffs and the Sonny Liston Plaintiffs WITH PREJUDICE.  Further, because the predicate FLSA violations must be dismissed, the section 17200 claims by Slattery, the Police Officer Plaintiffs, and the Sonny Liston Plaintiffs against GoldenTree, FTI, and Gutzeit must also be dismissed WITH PREJUDICE.

**B.   Remaining Claims By Plaintiff Eftekhar Against GoldenTree, FTI, and Gutzeit**

Plaintiff Eftekhar worked for Axium until January 2008 when Axium went into bankruptcy.  Therefore, the Court will address the merits of GoldenTree's and FTI and Gutzeit's motions directed to Eftekhar's FLSA and section 17200 claims.

        1.   <u>Plaintiff Eftekhar's Claims Against GoldenTree Must Be Dismissed.</u>

The Court recognizes that the definition of "employer" in the FLSA is broad.  <u>See</u> <u>Torres-Lopez v. May</u>, 111 F.3d 633, 638 (9th Cir. 1997) ("The FLSA's definition of employee has been called the 'broadest definition that has ever been included in any one act.'" (citation omitted)).  Eftekhar suggests, without much elaboration, that GoldenTree must be considered an "employer" under the FLSA.  Under the FLSA, employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."  29 U.S.C. § 203(d).  "In deciding whether a party is an employer, 'economic reality' controls rather than common law concepts of agency."  <u>Dole v. Elliot Travel & Tours, Inc.</u>, 942 F.2d 962, 956 (6th Cir. 1991).  Eftekhar suggests that the FLSA extends to entities "who, though lacking a possessory interest in the 'employer'

corporation, effectively dominate[] its administration or otherwise act[], or have the power to act, on behalf of the corporation vis-a-vis its employees." Reich v. Circle C. Inv., Inc., 998 F.2d 324, 329 (5th Cir. 1993).  The Court must "transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case." Dole, 942 F.2d at 965.

Eftekhar argues that GoldenTree is a "joint employer," although supporting allegations are noticeably absent from the FAC. Nevertheless, the factors to determine joint employer status are useful here.  Factors the Court must consider include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983), disapproved on other ground in Garcia v. San Antonio Metropolitan Transit Auth., 469 U.S. 528 (1985).

The "economic realities," as alleged in the FAC, do not demonstrate that GoldenTree was an employer under the FLSA.  Eftekhar argues that FTI and Gutzeit reported to GoldenTree on various aspects of Axium's business.  However, Eftekhar conspicuously limits GoldenTree's role in any management of Axium to control over Axium's business practices, not Axium's employment practices.  For example, Eftekhar alleges that FTI and Gutzeit reported to GoldenTree on the performance of Axium's departments and recommended whether departments should remain intact, that GoldenTree directed changes in employees' duties and organization of department heads, that FTI and Gutzeit recommended to GoldenTree changes in Axium's business and budget and

implemented GoldenTree's budget directives.  (FAC ¶ 19.)  The FAC contains <u>no</u> allegations that GoldenTree had any control over hiring or firing individual employees, over work schedules or conditions of employment, over rate and method of pay, or over Axium's employment records.  These allegations do not state a claim that GoldenTree was an employer even within the broadest possible reading of the FLSA.

Eftekhar also alleges that GoldenTree, FTI, Gutzeit, and Axium, among others, were an "enterprise" under the FLSA.  (FAC ¶ 5.)  An "enterprise" under the FLSA means "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose."  <u>Chao v. A-One Med. Servs., Inc.</u>, 346 F.3d 908, 915 (9th Cir. 2003) (quoting 29 U.S.C. § 203(r)(1)).  An "enterprise" arises when three criteria are met: (1) the alleged enterprise engages in related activities; (2) the enterprise exercises unified operation or common control; and (3) the enterprise pursues a common business purpose.  <u>Id.</u>

The Court previously dismissed Plaintiffs' allegations of enterprise liability, but gave them the opportunity to amend their complaint to state a claim.  Given this opportunity, Plaintiffs have been able to muster the following facts to support their allegations of "enterprise liability" against GoldenTree:

> (1)  An allegation, without detail, that GoldenTree is part of an "enterprise" (FAC ¶ 5);
>
> (2)  An allegation, without detail, that GoldenTree "effectively took over management" of Axium at "some point in the second half of 2007" (FAC ¶ 18);
>
> (3)  An allegation that GoldenTree installed FTI and Gutzeit and their duties and responsibilities were related to GoldenTree, including recommending to GoldenTree any changes in corporate structure of Axium (FAC ¶¶ 19, 20);
>
> (4)  An allegation that GoldenTree "made a decision to actively

operate the business of Axium for its benefit" (FAC ¶ 20); and

(5)   An allegation that GoldenTree had a common business purpose with FTI and Gutzeit in operating Axium to safeguard monies invested (FAC ¶ 21).

First, "[t]he activities of two companies are 'related' if they are 'the same or similar.'" Chao, 346 F.3d at 915.  Eftekhar admits that Axium was a payroll services company and GoldenTree was a financial lender.  GoldenTree lent Axium $130 million in financing between 2004 and 2007.  (FAC ¶ 17 (GoldenTree Compl. ¶ 14).)  When Axium experienced financial issues at the end of 2007, GoldenTree installed consultant FTI (who provided its employee Gutzeit) to help the troubled borrower.  GoldenTree, however, did not change its activities to include payroll services, nor does Eftekhar allege that GoldenTree took over the actual business operations of Axium when it was in financial trouble.  Rather, the allegations demonstrate that GoldenTree installed FTI and Gutzeit to ensure that Axium could continue operating its business as it had in the past.

The cases dealing with "the same or similar" activities focus on the business activities of the companies in the alleged enterprise, not their management of one another's operations.  See also 29 C.F.R. § 779.206 (defining "related activities" as business activities, rather than management activities).  For example, in Chao, the Ninth Circuit held that the activities of two entities were "the same or similar" under the FLSA's definition of "enterprise" because "they were both providing home health services."  Chao, 346 F.3d at 915.  Similarly, the court in Brennan v. Plaza Shoe Store, Inc., 522 F.3d 843, 848 (8th Cir. 1975) found two companies' activities were related because "at each location the stores sold articles of wearing apparel

14

(shoes, dresses, handbags, hose, and accessories) to the general public entering the premises which housed both stores." Likewise, in Brock v. Hamad, 867 F.2d 804, 806 (4th Cir. 1989), the court had "no difficulty concluding . . . that the renting for residential purposes of the houses and apartments by the defendant clearly qualifies as 'related activities' under the statute."

Eftekhar argues that, because GoldenTree allegedly exercised some managerial control over Axium, it must be deemed to have engaged in "related activities." This argument goes to GoldenTree's employer status, not its membership in an FLSA enterprise, an argument the Court has already rejected above. Again, Eftekhar omits any allegations that GoldenTree controlled Axium's business operations such that it could be deemed to perform the same payroll functions as Axium. Eftekhar has failed to allege facts to demonstrate "related activities" under the FLSA enterprise theory of liability.

Further, "common control . . . exists where the performance of the described activities [is] controlled by one person or by a number of persons, corporations, or other organizational units acting together." Chao, 346 F.3d at 915 (citing 29 C.F.R. § 779.221) (brackets and ellipsis in original). "Control . . . includes the power to direct, restrict, regulate, govern, or administer the performance of the activities." Id. To determine common control, the Court must "look beyond formalistic corporate separation to the actual or pragmatic operation and control, whether unified or, instead, separate as to each unit." Id. (citation omitted). However, common control must be evaluated in light of the "related activities" discussed above. See 29 C.F.R. § 779.215 ("Under the definition of the terms, 'unified operation' and 'common control' refer to the

performance of the 'related activities.'"). For example, in <u>Chao</u>, the court found common control because the alleged employer "had assumed all financial responsibility for, and claimed the benefits and burdens of, the profits and losses of" the other alleged employer. <u>Id.</u> at 915-16. In <u>Brennan</u>, the court noted that common control relates to "the performance of the related activities of the businesses and that common ownership of the businesses may be a significant factor in determining control" and found dispositive the fact that the same family owned the four retail stores at issue. 522 F.2d at 849. Similarly, in <u>Brock</u>, the court noted that "common control is said to exist where the performance of the described activities is controlled by one person or by a number of persons, corporations, or other organizational units acting together," which existed in that case because "[a]ll the properties managed and controlled by the defendant were owned by the defendant, or by the defendant and his wife, or the defendant and his mother." 867 F.2d at 806-07.

Eftekhar's allegations on common control again fall short. She does not allege that GoldenTree owned Axium or that GoldenTree controlled Axium's payroll services business. At most, Eftekhar's allegations reveal that GoldenTree sought to install FTI and Gutzeit to rectify Axium's financial troubles and stave off bankruptcy. That GoldenTree might have had some control over the Axium's financial health does not suggest that GoldenTree could or did exercise common control over Axium's payroll business.

Finally, "a common business purpose includes activities which are directed to the same business objective or to similar objectives in which the group has an interest." <u>Brock</u>, 867 F.2d at 807. "[C]ommon business purpose is generally found where there are related activities

and common control." <u>Chao</u>, 346 F.3d at 916.  Eftekhar has failed to allege either related activities or common control between GoldenTree and Axium, which also fatally undermines her claims of a common business purpose.  She also improperly focuses on the business purposes of GoldenTree and the other Defendants in ensuring that Axium remains financially viable.  GoldenTree's common purpose with the other Defendants, however, is irrelevant.  Eftekhar was employed by Axium and its related entities, so she must demonstrate that GoldenTree and Axium (not other Defendants) shared a common business purpose to be considered an enterprise.  As the Court previously stated, the mere abstract desire to remain in business and fulfill debt obligations cannot suffice under the FLSA, otherwise all companies, related or not, could be deemed an enterprise under the FLSA.

In short, Eftekhar has failed to allege that GoldenTree should be considered an "employer" or that GoldenTree and Axium must be considered an enterprise under the FLSA.  Likewise, because Eftekhar's claim against GoldenTree under the FLSA fails, so does her claim under section 17200 for these same violations.[6]  Leave to amend is also unwarranted.  Eftekhar was a named Plaintiff in the original complaint, and she had the opportunity to file the FAC with the benefit of the Court's similar analysis in granting GoldenTree's prior motion to dismiss.  <u>See</u> <u>Kendall v. Visa U.S.A., Inc.</u>, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (denying leave to amend because plaintiffs

---

[6]Eftekhar claims she was not paid for accrued vacation, but she does not allege that her section 17200 claim is based on any California Labor Code violations.  Because she had the opportunity to replead this claim and still failed to properly plead it, the Court dismisses her section 17200 claim against GoldenTree.

were already "put on notice once before of the same defects that led to the dismissal of their First Amended Complaint."). Therefore, Defendants GoldenTree Asset Management LP and GTAM Special Realty, LLC's motion to dismiss Eftekhar's claims against them is GRANTED WITH PREJUDICE. Because no claims are left against GoldenTree Asset Management LP and GTAM Special Realty, LLC, they are DISMISSED from this case.

        2.   <u>Plaintiff Eftekhar Has Failed to State A Claim Under the FLSA Against Defendants FTI and Gutzeit.</u>

As with her claims against GoldenTree, Eftekhar fails to state a claim under the FLSA against FTI and Gutzeit for two reasons. First, she has failed to plead that she is entitled to relief. Second, she has failed to plead that FTI and Gutzeit must be deemed employers.

First, Eftekhar alleges that she was a "full time employee" of "Defendants" until early January 2008 and that she "has not been paid for her final days of work, or accrued vacation days." (FAC ¶¶ 2, 28.) Eftekhar seeks to represent a class of similarly situated employees, but she fails to define the contours of that class she purports to represent, such as what position she held, what entity she worked for, whether she was exempt or non-exempt in that position, how long she held her position, or what hours she was required to work. She vaguely alleges that she has not been paid for her "final days of work" and "accrued vacation days," but she does not allege when she began working for "Defendants," how much she was paid, and what she is owed in wages and vacation time. Defendants cannot defend themselves against these allegations without further details.

These are precisely the sort of conclusory allegations that fail the "plausibility" standard under <u>Twombly</u>. 127 S. Ct. at 1967. In

Twombly, the Supreme Court set the standard under Rule 8(a): "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. at 1964-65 (internal citations omitted; brackets in original). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. The FLSA mandates that an employer pay an employee the minimum wage, but Eftekhar has only provided a formulaic recitation of the elements of her claim under FLSA, i.e., that unidentified "Defendants" were required to pay the minimum wage and failed to do so. This is the sort of conclusory speculation that does not elevate Eftekhar's FLSA claim above the speculative level.

Even if she could plead an FLSA claim, she has failed to plead facts that would impose liability on FTI and Gutzeit. As outlined above, the Court must consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470. Although Eftekhar alleges that Gutzeit (as FTI's employee) took over the day-to-day management of Axium, she does not allege that Gutzeit hired or fired employees, controlled schedules and working conditions, set wage rates, or maintained employee records. Eftekhar does allege that Gutzeit monitored and reported departmental performance, recommended changes in departments, initiated changes in employees' duties, and reviewed performance of department heads. This is insufficient,

1   however.   None of these allegations suggests that Gutzeit controlled

2   (or had the power to control) the working conditions of either

3   Eftekhar or employees at her level.   At most, Gutzeit signed

4   employee's paychecks, but the FAC does not specify whether she signed

5   Eftekhar's paychecks.   These vague and conclusory allegations are

6   insufficient to state a claim against FTI and Gutzeit as employers.

7        Similarly, FTI and Gutzeit do not constitute an enterprise with

8   Axium for the reasons discussed above.   FTI and Gutzeit shared no

9   related activities with Axium; they were consultants, while Axium was

10  a payroll services company.   Eftekhar alleges that FTI and Gutzeit

11  undertook myriad activities that Axium would have performed itself,

12  but this allegation relates to FTI and Gutzeit's status as employers,

13  not their related business activities to create enterprise liability

14  under the FLSA.   Further, Eftekhar does not allege that FTI and

15  Gutzeit were subject to unified operations or common control with

16  Axium.   GoldenTree hired FTI and Gutzeit as consultants to evaluate

17  the financial health of Axium, which was not necessarily under

18  GoldenTree's control, outside of the forbearance agreement with

19  GoldenTree.   FTI and Gutzeit's only business purpose in common with

20  Axium was the desire to keep Axium in business, which, as discussed

21  above, is insufficient under the FLSA.

22       The Court GRANTS FTI and Gutzeit's motion to dismiss Eftekhar's

23  FLSA claims WITHOUT PREJUDICE.   Because FTI and Gutzeit did not move

24  to dismiss the original complaint, Eftekhar is GRANTED leave to

25  replead her claims that FTI and Gutzeit were "employers" or "joint

26  employers" pursuant to the factors outlined in Bonnette, 704 F.2d at

27  1470.   Eftekhar may also replead her individual wage claims as

28

1    discussed above.[7]

2              3.    Plaintiff Eftekhar's Section 17200 Claim Against FTI

3                    and Gutzeit Must Be Dismissed.

4         FTI and Gutzeit argue that Eftekhar cannot obtain restitution

5    from them under section 17200 because they never personally acquired

6    her unpaid wages.   See Bradstreet v. Wong, 161 Cal. App. 4th 1440,

7    1460 (2008).   In Bradstreet, the California Court of Appeal held that,

8    because individual managers of a corporation could not be deemed

9    employers under various provisions of the Labor Code, they did not

10   "personally benefit[] from intervener's labor without paying for it"

11   and could not be compelled to pay restitution to the plaintiffs.   Id.

12   at 1461.   The Court declines to decide this issue now.   Eftekhar does

13   not allege that FTI or Gutzeit actually possessed her unpaid wages,

14   but she alleges that FTI and Gutzeit were her employers.   Under the

15   rationale in Bradstreet, if FTI and Gutzeit could be deemed employers,

16   they could be subject to restitution under section 17200.   While the

17   Court has found the current pleading insufficient to state a claim, it

18   has granted Eftakher leave to amend that complaint.   Rather than

19   decide the issue now, the Court will permit FTI and Gutzeit to renew

20   their argument in challenging any amended pleading.

21        Because Eftekhar's section 17200 claim rests on violations of the

22

23        [7]To be perfectly clear, Eftekhar is not granted leave to replead
     her enterprise theory of liability.   It is clear that enterprise
24   liability is the wrong legal theory – GoldenTree, FTI, and Gutzeit
     were not acting as an "enterprise" in guiding Axium's activities prior
25   to bankruptcy.   The Court, however, will consider additional
     allegations that FTI and Gutzeit were employers under the factors
26   discussed in Bonnette, 704 F.2d at 1470.   The Court also reiterates
     that Eftekhar may not add any new claims or Plaintiffs to this action.
27   Following the Court's Order here, Eftekhar is the only proper
     Plaintiff under the FLSA.   Any new allegations inconsistent with the
28   Court's Order will be stricken and Eftekhar may be sanctioned.

1  FLSA and the Court has dismissed those claims, the Court also

2  DISMISSES Eftekhar's section 17200 claim WITHOUT PREJUDICE.

3  **IV.   CONCLUSION**

4      The Court GRANTS GoldenTree's and FTI and Gutzeit's motions to

5  dismiss.  The Court DISMISSES WITH PREJUDICE all claims brought by

6  Plaintiffs except Courtney Eftekhar against Defendants GoldenTree

7  Asset Management LP, GTAM Special Realty, LLC, FTI Consulting, Inc.

8  and Gina Gutzeit.  The Court DISMISSES WITH PREJUDICE all of

9  Eftekhar's claims against Defendants GoldenTree Asset Management LP

10 and GTAM Special Realty, LLC.  No claims remain against Defendants

11 GoldenTree Asset Management LP and GTAM Special Realty, LLC, so the

12 Court DISMISSES them from this case.  GoldenTree Asset Management LP

13 and GTAM Special Realty, LLC are ORDERED to lodge a proposed judgment

14 with the Court **within the (10) days of the date of this Order.**

15     The Court DISMISSES WITHOUT PREJUDICE all of Eftekhar's claims

16 against Defendants FTI Consulting, Inc. and Gina Gutzeit.  The Court

17 GRANTS Plaintiff Eftekhar leave to amend her complaint **within ten (10)**

18 **days of the date of this Order** to replead <u>only</u> her claims against

19 Defendants FTI Consulting, Inc. and Gina Gutzeit based on the Court's

20 discussion above.  Eftekhar may <u>not</u> add additional parties or claims

21 not specifically permitted by this Order.  Doing so may result in

22 striking the amended complaint and/or sanctions.  Failure to file an

23 amended complaint within the time set by the Court will be deemed

24 consent to dismissal with prejudice.  If that occurs, the Court will

25 not notify the parties prior to dismissal.

26     **IT IS SO ORDERED.**

27     **DATED:     July 11, 2008**

28                                      _____
                                        **AUDREY B. COLLINS**
                                        **UNITED STATES DISTRICT JUDGE**